CHARLOTTE M. FREY *v.* BERNARD GREENBERG, TRUSTEE
(ESTATE OF FREDERICK C. SPENCER), ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued May 6—decided June 3, 1964

*Marshall N. Dudley,* for the appellant (plaintiff).

*Joseph J. McGuinness,* with whom was *John B. Grant,* for the appellees (defendants Guilford Free Library Association et al.).

KING, C. J.   This is an appeal from the decree of the Superior Court construing certain portions of article I of the will of Frederick C. Spencer dated March 5, 1934, and admitted to probate on February 24, 1936.

A statement of facts adequate for an understanding of our decision may be given in somewhat simplified and abbreviated form.   After making certain small bequests to his wife, Marilla, the testator gave the residue of his estate, amounting at his death to about $200,000, in trust to pay the entire income for

life to Marilla. He further provided that if the plaintiff was living with him and his wife as a companion and member of the family at the time of his death, then upon his wife's death the trustee should set aside $25,000 of the general trust corpus as a separate trust fund. The plaintiff was still in the service of the family at the date of the testator's death, and the separate trust fund was, at Marilla's death, established. It perhaps should be mentioned that in his will the testator "earnestly" requested Marilla to give the plaintiff, during Marilla's life, "the same shelter, support and protection which she at the present time enjoys".

The separate trust fund was to be administered according to the following provision: "I direct that the entire income from said separate Trust Fund . . . be paid in monthly installments as nearly equal as practicable to . . . Charlotte M. Frey during the remainder of her life". At her death, the entire principal of the separate trust fund was to be returned to, and form a part of, the general trust fund. The testator also provided that if the income from either the general trust fund or the separate trust fund "shall in any year be insufficient, by reason of serious illness or unforeseen emergency of any nature, to provide for the reasonable needs of the beneficiary of such Fund, I direct that my . . . Trustee may, in his discretion use for the purpose of meeting such unusual needs such part or all of the principal of each Fund [for its beneficiary] as he shall deem proper".

The basic controversy in this appeal concerns the extent to which, if at all, the trustee, in the exercise of his discretion to invade principal, should consider other income and capital assets of the plaintiff. The income of the remainder of the general trust corpus

was given, in perpetuity, to two charities, The Public Health Nurses' Association of Guilford and the Guilford Free Library. Each of these associations, as well as the trustee, was made a party defendant in this proceeding, which was originally instituted by the plaintiff.

At the time of the execution of the will in 1934, the plaintiff, who was then about thirty-five years old, was employed as a housekeeper and companion in the family of the testator and his wife at wages of $12 a week together with board and room. She had been continuously so employed for about eighteen years at the death of the testator. Thereafter, she stayed on with the testator's wife, Marilla, for a long time and during at least some of that time received somewhat higher wages for her services. The plaintiff had no other assets or income at the testator's death and is now about sixty-five years old. In 1955, the plaintiff received a legacy from a deceased relative and used the proceeds in the purchase of a house in Guilford which is now worth about $17,000. It is presently used by the plaintiff as a residence and is subject to a $6000 mortgage, payable in monthly instalments of principal and interest. Since the institution of this action, she has received a legacy of $15,000 from Marilla's estate and her income, apart from any received on the $15,000 legacy, consists of social security benefits in the amount of $88.50 a month and $40 a month from the rental of a portion of her residence. The average monthly income from the securities forming the separate trust of $25,000 is presently $157.55. This amounts to a total monthly income, exclusive of any derived from the legacy, of about $286. To what extent her income has been augmented by the investment of the $15,000 legacy was not disclosed. It was stipu-

lated that "[t]he average monthly requirements and needs of the plaintiff" amount to $330.

The meaning of the provision in question is to be determined from the intent expressed by the language used, construed in the light of the surrounding circumstances as of the date the will was executed. *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 278, 170 A.2d 130. If the provision is so construed, it is clear that the plaintiff is to have the income for life of the separate trust fund, and, under certain conditions, the trustee is authorized, in his discretion, to invade the principal. This is not a gift of support within the rule of cases such as *Hoops* v. *Stephan,* 131 Conn. 138, 147, 38 A.2d 588. Rather, it is a gift of income coupled with a provision that the principal may be invaded in case of need, and the private income of the beneficiary must be considered by the trustee in determining whether a need, within the terms of the will, exists. Ibid.; *Guaranty Trust Co.* v. *New York City Cancer Committee,* 145 Conn. 542, 547, 144 A.2d 535; 2 Scott, Trusts (2d Ed.) § 128.4, p. 939; note, 2 A.L.R.2d 1383, 1431 § 26.

We conclude that the exercise of discretion by the trustee in paying all or any portion of the principal of the separate trust fund is conditioned, inter alia, upon the exhaustion, by the beneficiary, of substantially all her income from other sources including that from the $15,000 legacy and her social security benefits. This is in accord with the general rule in Connecticut and elsewhere. Note, 2 A.L.R.2d 1383, 1432.

The next question is to what extent the plaintiff's capital assets should be considered by the trustee in exercising his discretion as to the invasion of principal for payments to the plaintiff. Counsel for

the two charities agreed in oral argument that they no longer press any claim for a construction, such as was adjudicated by the court below, which would require that the plaintiff's home be sold and the proceeds exhausted as a condition precedent to the trustee's invasion of principal. See *Union & New Haven Trust Co.* v. *Watrous,* 109 Conn. 268, 272, 146 A. 727.

As previously noted, however, the plaintiff received a $15,000 legacy after the institution of this action. Under the circumstances, this asset, and any other capital assets but her home, must be substantially exhausted before the trustee is empowered to exercise his discretion to invade the principal in order to make payments to the plaintiff in addition to the income from the trust. *Guaranty Trust Co.* v. *New York City Cancer Committee,* supra. The right of invasion is conditioned not merely "to provide for the reasonable needs of the beneficiary" but is further restricted by the provision that the insufficiency of the income must arise as a result of "serious illness or unforeseen emergency of any nature", and the trustee is empowered to exercise his discretion "for the purpose of meeting such unusual needs". These provisions make it clear that the powers of invasion are far from unbridled.

The terms of the will manifest an intention to protect the plaintiff from actual want even if the principal of the corpus of the separate trust has to be invaded to accomplish that end. But it is equally clear that, subject to this contingency, the testator intended the corpus of the separate trust to be returned intact to the general trust corpus after fulfilment of the provision for the life income for the plaintiff. We find nothing in the will to indicate that the testator intended that the plaintiff could

conserve her own resources and thereby procure the invasion and diminution of assets which would otherwise be returned to the general trust fund for the benefit of the charities to which he had ultimately given the income from most of his estate. In this connection, the comments of the annotator in 2 A.L.R.2d 1383, 1444 §29 are pertinent.

The third question asks whether the trustee, assuming he is authorized to invade principal, can make regular monthly payments of principal to the plaintiff. This is a minor administrative matter which rests in the sound discretion of the trustee, and we shall not exercise that power for him nor direct him in its exercise. Therefore, we do not answer the question.

The fourth question asks whether the phrase "unforeseen emergency of any nature" would embrace an inability to work at gainful employment because of old age. The trustee would have discretion to invade principal, provided an actual need arose from insufficient funds, even though that insufficiency arose from inability to pursue gainful employment because of old age or physical or mental disability. This interpretation is in accord with the general intent disclosed in the will, as previously noted, to confer discretion on the trustee to protect the plaintiff from actual want. Counsel in oral argument stated that the plaintiff, since the institution of this action, has become seriously ill and is presently in a hospital. Consequently, the trustee's exercise of discretion to invade principal, assuming substantial exhaustion of the plaintiff's other income and capital assets except for her residence, would be authorized under the "serious illness" provision previously quoted, even without regard to the "unforeseen emergency" provision. Thus, it would

appear that the answer to the fourth question is now academic and will remain so until the plaintiff recovers from her present illness.

It must be understood, in connection with our answers to the questions propounded, that invasion of principal is not within the trustee's discretion unless and until the plaintiff's other income and capital assets except for her home have been substantially, although not necessarily literally, exhausted.

Question one was correctly answered "Yes". Question two should, in view of the agreement of counsel, now be answered "Yes, except that the plaintiff's residence need not be sold and the proceeds therefrom exhausted". Question three should not have been answered. Question four should have been answered "Yes, in case of actual need".

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.